## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NOELLE ELIZABETH SHUE,** | : | **Civil No. 1:15-CV-416** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner of** | : | |
| **Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

In this social security appeal we are called upon to assess the decision of an Administrative Law Judge which rejected the opinion of a treating medical source, based upon the ALJ's speculative views regarding what the treating source's records should have shown, and then embraced the opinion of a non-treating non-examining source based upon the factually incorrect assumption that this source had access to the claimant's full medical records when rendering an opinion on the claimant's impairments.  Finding that the speculative basis for discounting the treating source opinion, coupled with the erroneous assumption which justified affording great weight to the opinion of a non-treating and non-examining source, in combination

undermine confidence in this disability determination in this case, we will remand this case for further consideration.

This is an action brought by Plaintiff Noelle Elizabeth Shue, an adult individual who resides in the Middle District of Pennsylvania, under 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Ms. Shue's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. This matter has been assigned to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 11; Doc. 13). For the reasons expressed herein, the Commissioner's decision shall be **VACATED**, and Ms. Shue's request for a new administrative hearing shall be **GRANTED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

As of her alleged onset date, Ms. Shue was thirty-two years old. She resided with her fiancé, and shared custody of her son with her ex-husband. Ms. Shue's son spent most of his time at his father's house, but spent weekends and summers with his mother. Ms. Shue last worked in September 2008, and testified that she was fired from her last job because she would have panic attacks, crying spells, and angry outbursts at work. (Admin. Tr. 59). In a function report dated December 6, 2011,

however, Ms. Shue reported that although she had been warned about her behavior at work, she had never been fired or laid off because she had problems getting along with other people.  (Admin. Tr. 251).  She alleged that as of August 5, 2011, the symptoms and limitations associated with the following impairments made it impossible for her to work:  endometriosis, anxiety, bipolar disorder, panic attacks, depression, and sleep disorder.  (Admin. Tr. 237).  During her administrative hearing Ms. Shue also reported that she was physically limited.  She reported that she had wrist pain, hand tremors, migraines, and tension headaches.  (Admin. Tr. 59-60, 250).

With respect to the frequency and severity of her symptoms, Ms. Shue reported that she experienced panic attacks three days per week, each attack lasting no more than one and one half hours, and that she got extremely stressed around crowds.  (Admin. Tr. 67, 71).  She reported that it was typical for her to lack the motivation to go outside approximately five days per week.  (Admin. Tr. 69).  She testified that she experienced migraine headaches approximately four times per month (each lasting between four and twenty-four hours), and daily tension headaches.  (Admin. Tr. 76-77).  Ms. Shue testified that, due to her tendon injury, her fiancé helps her cut her food and shower.  (Admin. Tr. 70, 75-76).  She reported that the greatest weight she lifts is a jug of milk, and that she could walk up to one-half mile before she needs to stop and rest.  (Admin. Tr. 74, 250).

3

On October 25, 2011, Ms. Shue protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.  As part of the initial administrative evaluation of Ms. Shue's claims, she was examined by nontreating psychologist Dr. Fischetto, and the evidence of record was assessed by two non-examining State agency consultants – Dr. Kerry Brace, and Dr. Nghia Van Tran.

On January 17, 2012, Ms. Shue was examined by Dr. Fischetto.  Dr. Fischetto noted that Ms. Shue was groggy, shaking, had tremors, and was crying hysterically throughout the examination while talking about traumatic events that occurred when she was young. (Admin. Tr. 327).  Dr. Fischetto also noted that, despite her hysterics, Ms. Shue was pleasant and cooperative. (Admin Tr. 330).  During examination Ms. Shue demonstrated poor concentration based on her inability to calculate serial sevens, her remote memory was limited, her recent past and recent memory were average, her immediate retention and recall were poor, her impulse control was limited, her social judgment was limited with hyperactive behavior, her test judgment was average, and her reliability was good.  Dr. Fischetto diagnosed Ms. Shue with: major depressive disorder, recurrent, severe, without psychotic features; panic disorder without agoraphobia; post-traumatic stress disorder features; bipolar disorder, NOS (provisional); drug and alcohol abuse in remission; personality

disorder, NOS; and endometriosis, history of cervical cancer.  He assessed a current GAF score of 45.   In an accompanying medical source statement Dr. Fischetto assessed that Ms. Shue would have extreme difficulty responding appropriate to work pressures in a usual work setting and responding appropriately to changes in a routine work setting.   He opined that Ms. Shue would have moderate difficulty: understanding, remembering, and carrying out detailed instructions; making judgments on simple work-related decisions; and interacting appropriately with coworkers, supervisors, and the public.

On January 24, 2012, psychologist Kerry Brace assessed Ms. Shue's mental RFC based on the available evidence of record.  Dr. Brace opined that Ms. Shue was able to meet the basic mental demands of competitive work on a sustained basis despite moderate limitations in the following activities:   understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being distracted by them; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms and to performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding to criticism from supervisors;

getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and, responding appropriately to changes in a work setting.  (Admin. Tr. 112-14).

On January 24, 2012, Dr. Van Tran assessed Ms. Shue's physical RFC based on the available evidence of record.  Dr. Van Tran opined that Ms. Shue could: occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand and/or walk (with normal breaks) for a total of six hours per eight-hour workday; sit (with normal breaks) for a total of six hours per eight-hour workday; push and/or pull (including the operation of hand and foot controls) with the same weight limits prescribed for lifting and carrying objects; and, could work in any environment where she could avoid moderate exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, gases, and poor ventilation.  (Admin. Tr. 111).

Ms. Shue's claims were denied at the initial level of administrative review on January 30, 3012.  On February 9, 2012, Ms. Shue requested an administrative hearing.

Two weeks after Ms. Shue requested and administrative hearing, and one month after Dr. Brace's mental health assessment, on February 24, 2012, Ms. Shue experienced a severe psychological episode when she was taken to the York Hospital

6

Emergency Room after she took approximately thirty tablets of Ativan (lorazepam) in an attempt to commit suicide in response to stressors (i.e., fight with boyfriend, unstable housing, and financial concerns).  (Admin. Tr. 365, 387-88).  Ms. Shue tested positive for benzodiazepines and cocaine, and admitted to actively using crack cocaine, alcohol, and marijuana.  (Admin. Tr. 369, 383, 389).  Upon admission her global assessment of functioning ("GAF") score was about 35.  (Admin Tr. 381).  She was released on February 27, 2012, with a GAF score of 40.  Id.

Some seven months after Dr. Brace, a non-treating, non-examining source, opined on Ms. Shue's mental state, Shue's treating physician provided a starkly different opinion.  On August 31, 2012, treating medical source Dr. Corey Rigberg wrote a psychiatric progress note describing Ms. Shue's current diagnosis, symptoms, and offering the opinion that Ms. Shue "is incapable of working in any capacity at present, and for at least the next year, as her current state of mind remains depressed and easily angered, as well as panicky."  (Admin. Tr. 446).  Dr. Rigberg explained that Ms. Shue suffered from a severe case of bipolar disorder and panic disorder, that Ms. Shue still had suicidal ideation at times, had attempted suicide three times, and that her bipolar disorder induced angry manic episodes (as opposed to the euphoric variety).  Dr. Rigberg also reported that Ms. Shue suffers from migraine headaches.

On April 30, 2013, Dr. Rigberg completed a Psychiatric/Psychological

Impairment Questionnaire.  (Admin. Tr. 486-93).  In the questionnaire, Dr. Rigberg

reported that he first treated Ms. Shue on July 27, 2012, but opined that Ms. Shue has

been unable to work in any capacity since 2008.  Dr. Rigberg explained that Ms. Shue

was incapable of even low stress work, and would be absent from work between two

and three times per month as a result of her impairments.  Dr. Rigberg also assessed

that Ms. Shue would be markedly limited, or essentially precluded from engaging the

following activities in a meaningful manner:  remembering locations and work-like

procedures;  understanding  and  remembering  one  or  two  step  instructions;

understanding and remembering detailed instructions; carrying out simple one or two-

step  instructions;  carrying  out  detailed  instructions;  maintaining  attention  and

concentration  for  extended  periods;  performing  activities  within  a  schedule,

maintaining  regular  attendance,  and  being  punctual  within  customary  tolerances;

sustaining an ordinary routine without supervision; working in coordination with or

proximity to others without being distracted by them; completing a normal workweek

without  interruptions  from  psychologically  based  symptoms  and  performing  at  a

consistent  pace  without  an  unreasonable  number  and  length  of  rest  periods;

interacting  appropriately  with  the  general  public;  asking  simple  questions  or

requesting assistance; accepting instructions and responding appropriately to criticism

from supervisors; getting along with coworkers or peers without distracting them or

8

exhibiting behavioral extremes; responding appropriately to changes in the work setting; traveling to unfamiliar places or using public transportation; and setting realistic goals or making plans independently.  Dr. Rigberg assessed that Ms. Shue would be moderately limited, or would significantly affected but not totally precluded from engaging in the following activities: making simple work related decisions; and being aware of normal hazards and taking appropriate precautions.

Ms. Shue appeared and testified with her attorney during an administrative hearing held on May 13, 2013, before an Administrative Law Judge (ALJ).  Impartial vocational expert Paul A. Anderson also appeared and testified during the hearing.  On May 31, 2013, the ALJ issued a written decision denying Ms. Shue's claims.  In that decision, the ALJ accorded "limited" weight to the opinions of Dr. Rigberg and Dr. Fischetto,[1] and "significant" weight to the medical opinions of Dr. Brace and Dr. Van Tran.  With respect to Ms. Shue's own allegations, the ALJ found that although Ms. Shue was functionally limited by her impairments, her testimony about the extent of her functional limitations was not entirely credible.

After the ALJ issued his written decision, Ms. Shue requested review of the written decision by the Appeals Council of the Office of Disability Adjudication and

---

[1]ALJ Myers also accorded "limited" weight to the evaluation by Dr. Constance Ebong conducted at the York Hospital Emergency Department when Ms. Shue was examined after a suicide attempt on February 24, 2012.  (Admin. Tr. 383-85).

Review.  Ms. Shue also submitted new evidence that was not before the ALJ when he issued his decision.  (Admin. Tr. 7-16, 529-42).  On December 29, 2014, the Appeals Council denied Ms. Shue's request for review, making the ALJ's May 2013 decision the final decision of the Commissioner subject to judicial review by this Court.

On February 26, 2015, Ms. Shue initiated this action by filing a complaint.  In her complaint, Ms. Shue alleges that the ALJ's decision is not supported by substantial evidence, and is contrary to the applicable law and regulations.  (Doc. 1 ¶¶13-14).  On May 12, 2015, the Commissioner filed her answer, in which she contends that the ALJ 's decision is supported by substantial evidence and is correct and in accordance with the law and regulations.  (Doc. 5).  Together with her answer the Commissioner filed a certified copy of the administrative transcript, including the evidence reviewed by the ALJ when he issued his decision.  (Doc. 6).

This matter has been fully briefed by the parties and is now ripe for decision. (Doc. 7; Doc. 10).

## II.   LEGAL STANDARDS

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the record.  <u>See</u> 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200(3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).  The question before this Court, therefore, is not whether Ms. Shue is disabled, but whether the Commissioner's

finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.  See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

### B.    INITIAL BURDENS OF PROOF , PERSUASION AND ARTICULATION FOR THE ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a).   To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity

that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between steps three and four, the ALJ must assess a claimant's Residual Functional Capacity ("RFC"). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also

13

20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 20 C.F.R. §§404.1512, 416.912; Mason, 994 F.2d at 1064.

Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d

700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must

indicate which evidence was accepted, which evidence was rejected, and the reasons

for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate

in his decision which evidence he has rejected and which he is relying on as the basis

for his finding."  Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

**C.   LEGAL BENCHMARKS FOR THE ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE**

The Commissioner's regulations define medical opinions as "statements from

physicians and psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of [a claimant's] impairment(s), including [a

claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite

impairments(s), and [a claimant's] physical or mental restrictions.  20 C.F.R.

§§404.1527(a)(2), 416.927(a)(2).[2]  Regardless of its source, the ALJ is required to

evaluate every medical opinion received.  20 C.F.R. §§404.1527(c), 416.927(c).

---

[2]Medical source opinions on issues that are dispositive of a case, i.e., whether a claimant is disabled, are reserved to the Commissioner and do not constitute medical opinions defined by 20 C.F.R. §§404.1527(a)(2) and 416.927(a)(2).  20 C.F.R. §§404.1527(d), 416.927(d).  Such opinions must never be ignored, and must be considered based on the applicable factors in 20 C.F.R. §§404.1527(c) and 416.927(c).  SSR 96-5p, 1996 WL 374183 at *3.  However, medical opinions on issues reserved Commissioner, regardless of their source, are never entitled to controlling weight under 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2).  See 20 C.F.R. §§404.1527(d)(3), 416.927(d)(3); SSR 96-5p, 1996 WL 374183 at *2.

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §§404.1527(c) and 416.927(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and, therefore, their opinions generally entitled to more weight. See 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2)("Generally, we give more weight to opinions from your treating sources . . . ."); 20 C.F.R. §§404.1502, 416.902 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant

evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §§404.1527(c), 416.927(c).

At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators.  See SSR 96-5p, 1996 WL 374183 at *4.  As such, they do not express opinions; they make findings of fact that become part of the determination.  Id.  However, 20 C.F.R. §§404.1527(e) and 416.927(e) provide that at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants are evaluated as medical opinion evidence.  As such, ALJs must consider these opinions as expert opinion evidence by nonexamining physicians and psychologists and must address these opinions in their decisions.  SSR 96-5p, 1996 WL 374183 at *6.  Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record."  SSR 96-6p, 1996 WL 374180 at *2.  In appropriate circumstances, opinions from nonexamining State agency medical or psychological consultants may be entitled to greater weight than the opinions of treating or examining sources.  Id. at *3.

17

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704.  This principle applies with particular force to the opinion of a treating physician.  See 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

## III. DISCUSSION

The Commissioner's regulations define RFC as the most a claimant can still do despite his or her physical or mental limitations.  20 C.F.R. §§404.1545(a)(1). 416.945(a)(1).  The ALJ assesses a claimant's RFC between steps three and four of the sequential evaluation process, and uses this assessment at steps four and five of the sequential evaluation process to determine whether the claimant can engage in his or her past relevant work, and (if the evaluation proceeds) to determine whether the claimant can adjust to other work.  20 C.F.R. §§404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e).  An ALJ's RFC assessment is based on all of the relevant

18

medical and other evidence including statements by medical sources about what a

claimant can still do, and a claimant's own description of his or her limitations.  20

C.F.R. §§404.1545(a)(3), 416.945(a)(3).

This assessment, in turn is often used to convey a claimant's credibly

established limitations to a vocational expert.  On the subject of credibly established

limitations, the Third Circuit has noted that:

> Our cases have established some guidelines as to when a limitation is
> credibly established, and the governing regulations have something to
> say on that score as well (see especially Regs. §§ 945, 929(c) and 927).
> Limitations that are medically supported and otherwise uncontroverted
> in the record, but that are not included in the hypothetical question
> posed to the expert, preclude reliance on the expert's response (Burns,
> 312 F.3d at 123).  Relatedly, the ALJ may not substitute his or her own
> expertise to refute such record evidence (Plummer, 186 F.3d at 429).
> Limitations that are medically supported but are also contradicted by
> other evidence in the record may or may not be found credible—the ALJ
> can choose to credit portions of the existing evidence but "cannot reject
> evidence for no reason or for the wrong reason" (a principle repeated in
> Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993); Reg. § 929(c)(4)).
> Finally, limitations that are asserted by the claimant but that lack
> objective medical support may possibly be considered nonetheless
> credible.  In that respect the ALJ can reject such a limitation if there is
> conflicting evidence in the record, but should not reject a claimed
> symptom that is related to an impairment and is consistent with the
> medical record simply because there is no objective medical evidence to
> support it (Reg. § 929(c)(3)).

Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

19

Ms. Shue contends that the ALJ's RFC assessment in this case was undermined by a flawed assessment of the medical opinion evidence of record. She asserts that, as a result of these errors, the ALJ's RFC assessment fails to account for all of her credibly established limitations, and, therefore, undermines the ALJ's conclusion that she could adjust to "other work."

## A.   THE ALJ'S DECISION DENYING MS. SHUE'S CLAIMS

In the May 2013 decision denying Ms. Shue's claims, the ALJ found that Ms. Shue met the insured status requirement of Title II of the Social Security Act through September 30, 2013. Then, after assessing Ms. Shue's claims at steps one through five of the five-step sequential evaluation process the ALJ concluded that Ms. Shue was not under a disability as it is defined by the Social Security Act at any time between August 5, 2011, and May 31, 2013. (Admin. Tr. 48). At step one of the sequential evaluation process the ALJ found that Ms. Shue had not engaged in any substantial gainful activity between August 5, 2011, and May 31, 2013. (Admin. Tr. 39). At step two, the ALJ found that Ms. Shue suffered from the following medically determinable severe impairments: migraine headaches, major depressive disorder, panic disorder without agoraphobia, post-traumatic stress disorder, bipolar disorder, and personality disorder. Id. The ALJ found that Ms. Shue's tremors were a medically determinable non-severe impairment. (Admin. Tr. 40). At step three the

20

ALJ found that Ms. Sue did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

Between steps three and four of the sequential evaluation process the ALJ evaluated Ms. Shue's RFC, based on the relevant medical and other evidence of record. The ALJ found that Ms. Shue had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> the claimant is able to understand, remember and carry out simple instructions involving 1-2 step commands. She is capable of occasional decisionmaking. The claimant is able to tolerate occasional changes to the routine work setting, interaction with co-workers, and interaction with supervisors. She should have no interaction with members of the public and cannot perform occupations with strict production-rate pace of work. The claimant cannot be expected to work with coworkers. Finally, the claimant must be expected to be unpredictably unavailable for work an average of one day per month.

(Admin. Tr. 42).

The ALJ's findings at steps four and five of the sequential evaluation process were informed by VE Anderson's testimony. VE Anderson testified that an individual under thirty-five years old, with the equivalent of a high school education could not engage in Ms. Shue's past relevant work as a general clerk or warehouse worker. (Admin. Tr. 79-80). Accordingly, at step four, ALJ Myers found that Ms. Shue could not engage in any of her past relevant work. (Admin. Tr. 47). VE

Anderson also testified that such an individual could engage in other occupations that exist in the national economy.  VE Anderson identified the following examples: janitor (DOT #389.667-010); cleaner, housekeeping (DOT #323.687-010); and bakery worker, conveyor line (DOT #524.687-022).  (Admin. Tr. 80).  VE Anderson's testimony reveals that these occupations amount to an approximate total of 310,000 jobs in the national economy, 2690 of which are in Ms. Shue's local labor market.  Id.  Accordingly, at step five, the ALJ concluded that Ms. Shue could adjust to other work that exists in the national economy.  (Admin. Tr. 47-48).

### B.   WEIGHT OF THE MEDICAL EVIDENCE

In his decision, the ALJ explained his decision to accord "limited" weight to Dr. Rigberg's opinion as follows:

> Limited weight is accorded to the medical source statement of Dr. Rigberg.  Although the undersigned acknowledges that the claimant's mental impairments result in significant limitations of her mental functioning, the medical evidence of record does not support a finding of marked limitation in the fifteen areas of functioning noted in Dr. Rigberg's medical source statement. *More particularly, the undersigned would expect to see such marked functioning would impact claimant's own treatment with Dr. Rigberg, such as in numerous and consistently missed, abbreviated or aborted appointments, and confusing, unfocused, inconsistent interactions with medical personnel, which are not reflected in medical treatment notes.*

(Admin. Tr. 46)(emphasis added).

22

It was on the basis of this speculation regarding what Dr. Rigberg's treatment notes should have shown, that the ALJ discounted this treating source opinion.  The ALJ then went on to give great weight to the opinion of Dr. Brace, a non-treating and non–examining source, stating Dr. Brace's January 24, 2012, opinion had greater validity because that Dr. Brace was "able to review the claimant's full, available medical records prior to making [her] determinations."  (Admin. Tr. 46).

Ms. Shue argues that the ALJ erred both by according too much weight to Dr. Brace and by declining to credit Dr. Rigberg.  Specifically, she argues that the ALJ improperly relied on his own speculation to discount the opinion of Dr. Rigberg, and then failed to adequately explain his rationale for affording "significant" weight to the opinion of Dr. Brace – a non-examining source who only had the benefit of reviewing a partial record in formulating her opinion.  Ms. Shue contends that if Dr. Rigberg's opinion had been accorded appropriate weight she would have been found disabled.[3]

As discussed above, an ALJ may reject a well-supported treating physician's opinion outright only on the basis of contradictory medical evidence, "but may afford

---

[3]Dr. Rigberg estimated that Ms. Shue would be absent from work between two and three days a month – a limitation that VE Anderson testified would make her unemployable.

a treating physician's opinion more of less weight depending on the extent to which supporting explanations are provided". <u>Plummer</u>, 186 F.3d at 429(citing <u>Newhouse v. Heckler</u>, 753 F.2d 283, 286 (3d Cir. 1985)).   Furthermore, where a treating physician's opinion conflicts with that of a non-treating or non-examining physician the ALJ may "choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'"  <u>Morales</u>, 225 F.3d at 317 (quoting <u>Plummer</u>, 186 F.3d at 429).

With respect to Ms. Shue's first argument, it is well-settled that an ALJ should refrain from substituting his own lay opinion in place of a medical opinion.  <u>See Morales</u>, 225 F.3d at 319.  It is well-settled that:

> Because they are not treating medical professionals, ALJs cannot make medical conclusions in lieu of a physician:  ALJs, as lay people, are not permitted to substitute their own opinions for opinions of physicians.  This rule applies to observations about the claimant's mental as well as physical health.  As the Seventh Circuit stated, "[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."  Accordingly, "[a]n ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion."  Nor is the ALJ allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the record.  Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts,* § 6:24 (2013) (citations omitted).

<u>Biller v. Acting Comm'r of Soc. Sec.</u>, 962 F.Supp.2d 761, 779 (W.D.Pa. 2013); <u>see also</u>, <u>Voigt v. Colvin</u>, 781 F.3d 871, 876 (7th Cir. 2015)("The administrative law judge went far outside the record when he said that if Voigt were as psychologically

afflicted as Day thought, he 'would need to be institutionalized and/or have frequent inpatient treatment' – a medical conjecture that the administrative law judge was not competent to make.").  Moreover, ALJs are cautioned to avoid substituting their own speculative assessments regarding medical evidence for the competent medical evidence.  Thus, "an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence by independently 'reviewing and interpreting the laboratory reports.' "  Ambrosini v. Astrue, 727 F. Supp. 2d 414, 425 (W.D. Pa. 2010).  Likewise "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*."  Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004)(emphasis in original).  Although the Commissioner asserts, and we agree, that it "was not erroneous for the ALJ to note the lack of support in the record for Dr. Rigberg's opinion," (Doc. 10 at 20), fairly construed in this case the ALJ did more than simply note a lack of support for the opinion.  Rather, the ALJ speculated regarding what he expected that the medical records should have shown to manifest a "marked" impairment  in a clinical setting, and then rejected the treating source opinion due to that speculative assessment.

25

Accordingly, we find that because the ALJ's decision to disregard the opinion of Ms. Shue's treating physician was based primarily upon the ALJ's own lay assessment, it was in error.

The ALJ's treatment of Dr. Brace's opinion – which he accorded "significant" weight – compounds our concerns.  Although "[t]he Social Security regulations impose no limit on who much time may pass between a report and the ALJ's decision in reliance on it," Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011), the only basis cited in support of the ALJ's decision to credit Dr. Brace's assessment is that Dr. Brace was "able to review the claimant's full, available medical records prior to making [her] determinations."  (Admin. Tr. 46).

This premise– that Dr. Brace was "able to review the claimant's full, available medical records prior to making [her] determinations"– is incorrect.  In fact, it was impossible for Dr. Brace's January 24, 2012, opinion to take into account Ms. Shue's full medical history, since that opinion was rendered *prior* to Shue's February 2012 emergency mental health hospitalization, or Shue's treatment by Dr. Rigberg from April 2012 through 2013.

On this score, the controlling regulation,  SSR 96-6p, provides that:

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering

26

such factors as the supportability of the opinion in the evidence
including any evidence received at the administrative law judge and
Appeals Council levels that was not before the State agency, the
consistency of the opinion with the record as a whole, including other
medical opinions, and any explanation for the opinion provided by the
State agency medical or psychological consultant or other program
physician or psychologist.

1996 WL 374180 at *2.  An ALJ is required to explain the weight given to such

opinions in his or her decision.  Id. at *3.  Here, the ALJ failed to give any indication

that he considered whether Dr. Brace's assessment was supported by the records that

were not before Dr. Brace when she issued her opinion, or whether Dr. Brace's

opinion was consistent with the record as a whole.  Although the Commissioner

argues that ALJ Myers properly credited Dr. Brace's opinion because he found it

"more consistent with the record," (Doc. 10 at 24), careful scrutiny of the decision

reveals that the ALJ made no such finding.  Instead, the ALJ seems to have

erroneously concluded that Dr. Brace was "able to review the claimant's full,

available medical records prior to making [her] determinations."  This assumption

seems demonstrably incorrect since material mental health records were created only

*after* Dr. Brace issued her opinion.  Absent some further explanation, this Court is ill

equipped to make any assessment of whether the administrative decision is supported

by substantial evidence.

Accordingly, in light of the ALJ's erroneous reliance on his own lay opinions, and his failure to offer sufficient explanation in support of his decision to credit the opinion of Dr. Brace, we are compelled to remand this case for further proceedings for a more complete evaluation of the medical opinion evidence of record. While case law calls for a remand and further proceedings by the ALJ in this case, nothing in this opinion should be construed as suggesting what the ultimate outcome of this analysis should be. Instead, we simply direct that this analysis on remand adequately address the medical opinion evidence, and refrain from any lay medical judgments.

## IV.   CONCLUSION

Based on the foregoing, the Commissioner's final decision shall be **VACATED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §405(g). On remand the ALJ shall re-evaluate, and explain, his assessment of the medical opinion evidence of record.

An appropriate order shall follow.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: April 1, 2016